

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,                    )    *Opinion issued November 28, 2022*
                                  )
    Respondent,      )
                                  )
v.                                    )    No. SC89168
                                  )
KEVIN JOHNSON,                        )
                                  )
    Appellant.       )
                                  )
STATE OF MISSOURI,                    )
                                  )
                                  )
    Plaintiff/Appellant,    )
                                  )
v.                                    )    No. SC99873
                                  )
KEVIN JOHNSON,                        )
                                  )
    Defendant/Appellant.    )

### MOTIONS FOR STAY OF EXECUTION

PER CURIAM

Kevin Johnson was found guilty of first-degree murder and sentenced to death. His execution is scheduled for November 29, 2022. This matter comes before the Court on two motions – one by Johnson and one by the Special Prosecutor – to stay Johnson's execution. Neither Johnson nor the Special Prosecutor claims Johnson is actually innocent. Instead, Johnson relies on the claims of "constitutional error" asserted by the

Special Prosecutor in his motion to vacate Johnson's conviction under section 547.031.[1]

This Court has heard and rejected those claims before, however, and nothing asserted by the Special Prosecutor materially alters those claims or establishes any likelihood he would succeed on them if that case were to be remanded for a hearing as he claims it should be. Accordingly, both motions to stay Johnson's execution are overruled.

## Background

## I. Facts of Underlying Crime and Procedural History

A St. Louis County jury unanimously found Johnson guilty of first-degree murder and recommended the death penalty for the shooting of Kirkwood Police Sergeant William McEntee. On direct appeal this Court summarized the factual and procedural background as follows:

> [Johnson] had an outstanding warrant for a probation violation resulting from a misdemeanor assault. Around 5:20 in the evening of July 5, 2005, Kirkwood police, with knowledge of the warrant, began to investigate a vehicle believed to be [Johnson]'s at his residence in the Meacham Park neighborhood. The investigation was interrupted at 5:30 when [Johnson]'s younger brother had a seizure in the house next door to [Johnson]'s residence. The family sought help from the police, who provided assistance until an ambulance and additional police, including Sgt. McEntee, arrived. [Johnson]'s brother was taken to the hospital, where he passed away from a preexisting heart condition. [Johnson] was next door during this time, and the police suspended their search for [Johnson] and never saw [Johnson].
>
> After the police left, [Johnson] retrieved his black, nine millimeter handgun from his vehicle. When talking with friends that evening, [Johnson] explained his brother's death as, "that's f____ up, man. They wasn't trying to help him, that he was too busy looking for me." Around 7:30, two hours after [Johnson]'s brother had the seizure, Sgt. McEntee responded to a report of fireworks in the neighborhood and [Johnson] was nearby. As Sgt. McEntee spoke with three juveniles, [Johnson] approached Sgt. McEntee's patrol car

---

[1] All statutory references are to RSMo Supp. 2021 unless otherwise noted.

and squatted down to see into the passenger window. [Johnson] said "you killed my brother" before firing his black handgun approximately five times. Sgt. McEntee was shot in the head and upper torso, and one of the juveniles was hit in the leg. [Johnson] reached into the patrol car and took Sgt. McEntee's silver .40 caliber handgun.

[Johnson] proceeded to walk down the street with the black and silver handguns. He then saw his mother and her boyfriend. [Johnson] told his mother, "that m____ f_____ let my brother die, he needs to see what it feel[s] like to die." His mother replied, "that's not true." [Johnson] left his mother and continued to walk away.

Meanwhile, Sgt. McEntee's patrol car rolled down the street, hit a parked car, and then hit a tree before coming to rest. Sgt. McEntee, alive but bleeding and unable to talk, got out of the patrol car and sat on his knees. [Johnson] reappeared, shot Sgt. McEntee approximately two times in the head, and Sgt. McEntee collapsed onto the ground. [Johnson] also went through Sgt. McEntee's pockets.

Sgt. McEntee was shot a total of seven times in the head and upper torso. Six of the wounds were serious but did not render Sgt. McEntee unconscious or immediately incapacitated. One wound was a lethal injury that caused Sgt. McEntee's death. All seven wounds were from a nine millimeter handgun.

[Johnson] left the scene cursing and drove to his father's house. [Johnson] spent three days at a family member's apartment before arrangements were made for [Johnson] to surrender to a family member who was a police officer.

[Johnson] was indicted on one count of first-degree murder, one count of first-degree robbery, one count of first-degree assault, and three counts of armed criminal action. The murder count was severed from the other counts. [Johnson]'s first trial ended with a hung jury in the guilt phase. In this trial, the jury deliberated for four hours before finding [Johnson] guilty of first-degree murder. In the penalty phase, the jury spent four hours deliberating and found the following aggravating factors present: (1) "the defendant by his act of murdering Sgt. William McEntee knowingly created a great risk of death to more than one person by means of a weapon that would normally be hazardous to the lives of more than one person;" (2) "the murder of Sgt. William McEntee 'DID' involve depravity of mind, as a result thereof, the murder was outrageously and wantonly vile, horrible, and inhuman;" and (3)

"the murder of Sgt. William McEntee was committed against a peace officer while engaged in the performance of his official duty."

*State v. Johnson*, 284 S.W.3d 561, 567-68 (Mo. banc 2009).

This Court affirmed Johnson's conviction on direct appeal,[2] *id*. at 589, and the United States Supreme Court denied certiorari. *Johnson v. Missouri*, 558 U.S. 1054 (2009). Johnson filed a motion in state court for postconviction relief under Rule 29.15 and, after a hearing, this motion was overruled. *Johnson v. State*, No. 09SL-CC04252 (Jan. 12, 2012). This Court affirmed that denial,[3] *Johnson v. State*, 406 S.W.3d 892, 909 (Mo. banc 2013), and the Supreme Court denied certiorari. *Johnson v. Missouri*, 571 U.S. 1240 (2014). Johnson thereafter sought relief in this Court on multiple occasions. Each time, this Court rejected his claims and denied relief. *State v. Johnson*, No. SC89168 (Nov. 7, 2022) (overruling the motion for stay of execution); *State v. Johnson*, No. SC89168 (Aug. 30, 2022) (overruling the motion to recall the mandate and, alternatively, petition for writ of habeas corpus); *State v. Johnson*, No. SC89168 (Oct. 26, 2021) (overruling the motion for an order directing transportation of appellant for brain imaging and, alternatively, petition for writ of habeas corpus); *State v. Johnson*, No. SC89168 (Feb. 28, 2017) (overruling the motion to recall the mandate and, in the

---

[2]  Johnson asserted 11 points on direct appeal, all of which were denied. Relevant here, Johnson argued the circuit court erred in overruling a challenge pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), by accepting the state's race-neutral explanation regarding its strike of Juror Debra Cottman. *Johnson*, 284 S.W.3d at 570-71. Johnson also argued his sentence was disproportionate and that his sentence should be set aside due to the prosecutor's discretion in seeking the death penalty. *Id*. at 577

[3]  Johnson made another 11 claims in his state post-conviction relief proceedings, all of which were denied. *Johnson*, 406 S.W.3d at 909. Relevant here, he argued counsel ineffectively argued the *Batson* challenge regarding Juror Cottman. *Id*. at 906-07.

4

alternative, petition for writ of habeas corpus);[4] *State v. Johnson*, No. SC89168 (Oct. 27, 2015) (overruling the motion to recall the mandate and, in the alternative, petition for writ of habeas corpus).

Johnson also sought habeas relief in the federal courts, which rejected each of his claims and denied relief.[5] *Johnson v. Steele*, No. 4:13-CV-2046-SNLJ, 2018 WL 3008307 (E.D. Mo. June 15, 2018) (amended memorandum and order denying petition); *Johnson v. Steele*, 999 F.3d 584 (8th Cir. 2021) (denying certificate of appealability and affirming district court's refusal to recuse), *cert. denied*, 142 S. Ct. 1376 (2022).

After Johnson exhausted all legal avenues for relief, including direct appeal and various postconviction relief proceedings in state and federal courts, this Court sustained the state's motion and set Johnson's execution date for November 29, 2022.

---

[4]  Johnson raised eight claims or groups of claims in this petition, all of which were rejected. Relevant here, he argued Prosecutor Robert McCulloch engaged in selective prosecution in violation of the Eighth and Fourteenth Amendment, citing *McCleskey v. Kemp*, 481 U.S. 279 (1987). *See* Motion to Recall the Mandate, and Alternatively, Petition for Writ of Habeas Corpus at 6, *State v. Johnson*, No. SC89168 (Oct. 28, 2016). ("Just as the white Sgt. William McEntee was killed by an African American defendant who was sentenced to death, McCulloch's father was a police officer who was killed in the line of duty by an African-American man who was sentenced to death."); *Id.* at 7 (citing studies showing "troubling racial and geographic disparities in Missouri's death penalty" that concluded "that African-Americans who killed whites were '33% more likely than whites [who killed] whites to be charged/convicted of [a] capital murder for the same type of homicide" and "blacks accused of killing white victims five times more likely to be charged with capital murder than blacks accused of killing black victims"); *see also id.* at 69-80 (arguing Johnson was deprived of an unbiased prosecutor because of McCulloch's racial bias and, in particular, bias against black defendants accused of killing white police officers); *Id.* at 80-89 (arguing at length that statistical evidence showing a disparity in McCulloch's charging, jury selection, and convictions in death penalty and death penalty eligible cases establishes constitutional error under *McCleskey* and its progeny). This Court denied each of these arguments and all the others asserted in this petition.

[5]  In the federal courts, Johnson again pursued his claim that McCulloch's decision to strike venireperson Cottman was racially motivated in violation of *Batson*. The federal courts rejected all of Johnson's claims relating to the decision to strike this venireperson.

**II. Special Prosecutor's Motion to Vacate Pursuant to § 547.031**

In 2021, the legislature passed section 547.031, which empowers a prosecuting or circuit attorney in the jurisdiction of conviction to file a motion to vacate or set aside the judgment at any time upon information that the convicted person may be actually innocent or there was constitutional error at the original trial that undermines confidence in the judgment. Section 547.031 provides in its entirety:

> 1. A prosecuting or circuit attorney, in the jurisdiction in which a person was convicted of an offense, may file a motion to vacate or set aside the judgment at any time if he or she has information that the convicted person may be innocent or may have been erroneously convicted. The circuit court in which the person was convicted shall have jurisdiction and authority to consider, hear, and decide the motion.
>
> 2. Upon the filing of a motion to vacate or set aside the judgment, the court shall order a hearing and shall issue findings of fact and conclusions of law on all issues presented. The attorney general shall be given notice of hearing of such a motion by the circuit clerk and shall be permitted to appear, question witnesses, and make arguments in a hearing of such a motion.
>
> 3. The court shall grant the motion of the prosecuting or circuit attorney to vacate or set aside the judgment where the court finds that there is ***clear and convincing evidence of actual innocence or constitutional error at the original trial or plea that undermines the confidence in the judgment***. In considering the motion, the court shall take into consideration the evidence presented at the original trial or plea; the evidence presented at any direct appeal or post-conviction proceedings, including state or federal habeas actions; and the information and evidence presented at the hearing on the motion.
>
> 4. The prosecuting attorney or circuit attorney shall have the authority and right to file and maintain an appeal of the denial or disposal of such a motion. The attorney general may file a motion to intervene and, in addition to such motion, file a motion to dismiss the motion to vacate or to set aside the judgment in any appeal filed by the prosecuting or circuit attorney.

(Emphasis added).

6

On December 1, 2021, Johnson filed an application with the Conviction and Incident Review Unit ("CIRU") in the office of the St. Louis County Prosecuting Attorney, asking that it review his allegations of racial discrimination by the former prosecuting attorney, Robert McCulloch. Johnson supplemented his application in April 21, 2022, providing a statistical study he asserts proves his claims.

On May 11, 2022, the attorney general moved this Court to set an execution date for Johnson noting he had exhausted his direct appeals and postconviction relief in both federal and state courts. While the Court was considering this motion, the CIRU notified this Court in July that it had conducted a "preliminary investigation" of Johnson's claims but had reached no conclusions. Instead, it had concluded the CIRU and, through it, the entire prosecutor's office had a "conflict of interest" because one of Johnson's original defense attorneys is presently employed in the prosecutor's office. The CIRU stated it was attempting to locate a special prosecutor to complete the investigation and determine what action, if any, to take but had been "unable to locate a prosecutor who is willing and able to serve." On August 24, 2022, this Court scheduled Johnson's execution for November 29, 2022.

On October 12, 2022, the St. Louis County Prosecutor's Office finally alerted the circuit court to its claimed "conflict of interest" and asked it to appoint a special prosecutor pursuant to section 56.110. The office selected E. E. Keenan to fill that role and recommended him to the circuit court, which complied with this request and appointed Keenan as Special Prosecutor.

On November 15, 2022, 14 days before Johnson's execution date, the Special Prosecutor filed in the circuit court a motion to vacate Johnson's conviction under section 547.031.[6] His motion claims: (1) that Johnson's prosecution violated equal protection because it was motivated in substantial part by discriminatory intent;[7] and (2) previously undisclosed work product from the prosecutor's office, together with newly available legal authority, support the *Batson* claim Johnson asserted on direct appeal (and repeatedly since then) and further show the pervasive racial bias underlying his conviction and sentence.[8]

---

[6]  On the same day, the Special Prosecutor attempted to file in this Court: (a) an entry of appearance in Case No. SC89168; (b) a "notice" in that same case that he had filed the section 547.031 motion in the circuit court; and (c) a motion in that same case to stay Johnson's execution.  The case in which the Special Prosecutor sought to file these papers, Case No. SC89168, is the direct appeal of Johnson's conviction and sentence.  The parties to that case are Johnson, represented by his counsel, and the state, represented by the attorney general.  Though section 547.031 gives the Special Prosecutor the right to appeal the denial of his section 547.031 motion, he had not yet done so on November 15 and, when he did so (as he now has) that matter would be an appeal from a new action challenging Johnson's conviction and sentence and, therefore, it would be a new matter in this Court separate and apart from Johnson's original direct appeal.  Accordingly, this Court struck the Special Prosecutor's pleadings from Case No. SC89168 because "there are no matters pending before this Court at the present time to which Mr. Keenan is a proper party or representative."  *See State v. Johnson*, No. SC89168 (Nov. 17, 2022).  Now that the Special Prosecutor has appealed the denial of his section 547.031 motion and that appeal is now before this Court, *see State v. Johnson*, No. SC99873, his motion for a stay of Johnson's execution is filed in – and will be heard as part of – that case.

[7]  The Special Prosecutor does not offer, or even suggest that there may be, direct evidence that the decision to charge Johnson with capital murder was driven by the fact Johnson is African-American and/or that Sergeant McEntee was white.  Instead, he principally relies on a statistical report he claims shows a charging disparity between defendants accused of killing white victims, especially white police officers, owing solely or in substantial part to the defendants' race.

[8]  The Special Prosecutor claims that, in Johnson's first trial (which ended in a mistrial), McCulloch sought to manipulate the use of his peremptory strikes such that the circuit court would end up striking black venirepersons for whom McCulloch had no race-neutral reason to strike.  The trial court, instead, applied McCulloch's unused strikes in a way that would not (and did not) strike any of the remaining African-American members of the venire.  Before the re-trial, McCulloch's office researched caselaw to support their claim that the way the trial court used McCulloch's unused peremptory strikes in the first trial was error.  The issue never re-

8

On November 16, the circuit court summarily overruled the Special Prosecutor's motion to vacate under section 547.031.2. The Special Prosecutor and Johnson moved to amend the circuit court's judgment or, alternatively, grant a new trial. The circuit court held a telephone conference on these motions on November 17 and, on November 19, entered an order and judgment overruling those motions. In that order, the circuit court acknowledged that the plain language of section 547.031 required it to hold a hearing on the Special Prosecutor's motion but stated it lacked sufficient time to do so with Johnson's execution date so close at hand. The circuit court found fault with the Prosecutor's Office for taking so long to assert its "conflict of interest" and to come to the court for the appointment of a special prosecutor under section 56.110, RSMo 2016. In addition, though it did not blame Johnson, the circuit court found it "inexplicable" that the motion to vacate under section 547.031 was not filed until 14 days before Johnson's execution. In the end, the circuit court stated it found itself on the horns of a dilemma. It recognized it had no authority to stay the execution but could not reasonably order the hearing that section 547.031 required and then issue findings and conclusions to dispose

---

occurred, however, because, in the re-trial, the trial court applied McCulloch's unused peremptory strikes randomly to the entire venire. Johnson, throughout his years of direct appeal and other efforts to seek postconviction relief, has never challenged the method by which the trial court used McCulloch's unused peremptory strikes in the second trial, and it's not clear that the Special Prosecutor is doing so in his section 547.031 motion. Instead, he argues that McCulloch's failure to use all his peremptory strikes was merely an attempt to get the trial court to do what he could not, i.e., strike African-Americans from the venire, but does not explain what the supposed constitutional error was, who made it, or how it prejudiced Johnson. Much more clearly, however, the Special Prosecutor does claim that McCulloch's refusal to use all his peremptory strikes lends additional weight to Johnson's oft-rejected claim that McCulloch's peremptory strike of venireperson Cottman, an African-American, was racially motivated in violation of *Batson.*

9

of the merits of the Special Prosecutor's motion in the handful of days remaining before that execution.[9]  Accordingly, the circuit court explained it had no choice but to deny the motion without further delay.

Both the Special Prosecutor and Johnson have appealed the denial of the Special Prosecutor's section 547.031 motion.  Those appeals are pending before this Court in Case No. SC99873.[10]  The Special Prosecutor has filed a motion for stay of Johnson's execution in Case No. SC99873, and Johnson has a filed a motion for stay of execution in Case No. SC89168, the direct appeal from his conviction and sentence.  Neither the merits of the Special Prosecutor's appeal nor the ultimate resolution of his section 547.031 motion is before the Court at the present time.  Instead, the only question before this Court is whether to sustain either of the motions for stay of execution.

---

[9]  The circuit court recognized that much of the Special Prosecutor's motion was a "rearticulation of previously litigated claims" in that the motion merely recycled "arguments and claims previously raised on behalf of Kevin Johnson and rejected in the various Courts of Appeal in the State and Federal systems."  Order and Judgment, Nov. 19, 2022, at 4-5.

[10]  Like a petition for habeas corpus or motions for postconviction relief under Rules 24.035 and 29.15, it seems clear that a motion under section 547.031 is a new, collateral attack on the conviction and sentence and not part of the original criminal case regardless of how it is docketed or referred to in the circuit court.  *Cf. Staten v. State*, 624 S.W.3d 748, 751 (Mo. banc 2021) ("Though it was filed and adjudicated in the underlying criminal case, Staten's initial Rule 24.035 motion was, and clearly functioned as, an independent, post-conviction collateral attack of Staten's 2012 criminal judgment and sentence.").  And, because section 547.031 is a new civil action, it is an open question whether an appeal from the denial of such a motion falls within this Court's exclusive appellate jurisdiction, i.e., whether this is a "case[] where the punishment imposed is death."  Mo. Const. art. V, § 3.  To remove any cloud over this Court's jurisdiction to hear and rule upon the pending motions for stay of execution, therefore, this Court will treat the matter as having been filed first in the court of appeals and transferred to this Court prior to opinion under Rule 83.01 and reserve for later the question of whether Johnson's and the Special Prosecutor's appeals from the denial of the section 547.031 motion was properly filed in this Court in the first instance.

10

**Analysis**

All parties suggest that Johnson's and the Special Prosecutor's motions for stay of execution should be analyzed under the rubric applicable when any injunctive relief is sought before the party seeking such relief has demonstrated a right to any relief at all. Typically, courts do not view such requests with favor and review them under a four-prong analysis in which the Court weighs and balances: (1) the movant's probability of success on the merits; (2) the threat of irreparable harm absent a stay; (3) the balance between harm to the movant absent the stay and the injury inflicted on other interested parties if the stay is granted; and (4) the public interest. *State ex rel. Dir. of Revenue v. Gabbert*, 925 S.W.2d 838, 839-40 (Mo. banc 1996) (preliminary injunction); *see Hill v. McDonough*, 547 U.S. 573, 584 (2006) (stay of execution).

Under this rubric, Johnson's motion for stay of execution raises questions of first impression. Specifically, Johnson cannot show a likelihood of success of *his* claims because he no longer has any substantive claims for relief pending in this Court or any other state or federal court. Instead, he argues that (a) he will prevail on his appeal from the denial of the Special Prosecutor's motion to vacate and (b) the Special Prosecutor on remand to the circuit court ultimately will prevail on the claims raised in that motion.

Plainly, if Johnson had filed a petition for writ of habeas corpus or some other action for relief in this Court raising the claims the Special Prosecutor now raises in his section 547.031 motion to vacate, and if Johnson sought a stay of execution based on his likelihood of success on those claims, this Court would deny the stay and deny those claims without further delay. This is not speculation; Johnson has already raised these

11

claims in this Court, and this Court has denied them. *See supra* notes 2, 4 and 5. To the extent Johnson claims these are not precisely the same claims this Court already has rejected, he offers no sufficient excuse why he should be allowed to assert "new" claims after a thorough, 17-year review of his conviction and sentence involving at least eight separate legal proceedings. No, there simply is nothing here that Johnson has not raised (and that this Court has not rejected) before and, even if there were, Johnson offers no basis for raising any new or re-packaged versions of these oft-rejected claims at this late date. Accordingly, were Johnson's motion to stay based on the likelihood he could succeed on the merits of the claims now being brought by the Special Prosecutor, that motion is overruled.

If, on the other hand, Johnson's motion to stay turns on whether the Special Prosecutor has a substantial likelihood of success on his section 547.031 motion to vacate, then the analysis must focus on the Special Prosecutor's motion for stay of execution, not Johnson's. The Special Prosecutor's motion for a stay of execution, like Johnson's, also raises questions of first impression because this is the first time the procedure set forth in section 547.031 has been triggered regarding a conviction involving a death sentence. Moreover, it is the first time in which the procedure set forth in section 547.031 has been triggered by a "special prosecutor" appointed under section 56.110, RSMo 2016.[11] And, even though section 547.031 expressly gives the prosecutor

---

[11] It is not self-evident that the prosecutor's office has a "conflict of interest" with respect to whether the current St. Louis County Prosecutor should seek to vacate Johnson's conviction under section 547.031 because one of Johnson's original defense counsel now works at the prosecutor's office, or why this "conflict" could not be addressed by means other than

12

or circuit attorney the right to appeal if the motion to vacate a defendant's conviction is overruled, nothing in section 547.031 even suggests that the prosecutor has any authority to seek to stay an execution where the execution warrant issued before – and, here, nearly three *months* before – the motion to vacate was ever filed. That a motion to vacate under section 547.031 would be filed under such circumstances is hardly surprising, and the statute's silence with respect to whether the prosecutor can seek a stay is, to say the least, troubling.

But, setting these issues of first impression aside, the Court is persuaded to overrule the Special Prosecutor's motion for stay of execution for much the same reasons as it overruled Johnson's motion above. Even assuming that it was error for the circuit court to overrule the Special Prosecutor's motion to vacate Johnson's conviction without the hearing and express findings of fact and conclusions of law to which section 547.031 refers, and further assuming that the Special Prosecutor's motion was remanded for that hearing and those findings and conclusions, this Court holds that the Special Prosecutor's motion falls far short of the showing required by section 547.031.3, i.e., that there be

---

disqualifying the entire office. *See State ex rel. Peters-Baker v. Round*, 561 S.W.3d 380, 386-89 (Mo. banc 2018) (finding a personal conflict possessed by an assistant prosecutor in a large prosecutor's office does not necessarily impute the conflict to an entire office). What is clear, however, is that – if the St. Louis County Prosecutor's Office suffered from such a pervasive and irreparable "conflict of interest" with respect to the decision whether to seek to vacate Johnson's conviction under section 547.031 that it had no option but to recuse the entire office and seek the appointment of a "special prosecutor" under section 56.110, RSMo 2016, then it had no business selecting (or even recommending) the individual for the circuit court to appoint. Nothing in section 56.110, RSMo 2016, gives the prosecutor such a role, and one can easily imagine that doing so would spread whatever taint afflicted the prosecutor's office to the attorney that office selected and recommended.

"clear and convincing evidence" demonstrating a "constitutional error at the original trial … that undermines the confidence in the judgment."

As noted at the outset, neither the Special Prosecutor nor Johnson himself is claiming that Johnson is actually innocent, i.e., that he did not murder Sergeant McEntee exactly as the jury found he did. The only other ground for relief under section 547.031 requires that there be "clear and convincing evidence of . . . constitutional error at the original trial … that undermines the confidence in the judgment." § 547.031.3. The Special Prosecutor contends his motion establishes two such constitutional errors. This Court disagrees and holds that, even if the Special Prosecutor had the hearing he contends he is entitled to under section 547.031.2, the grounds set forth in the Special Prosecutor's motion fall well short of demonstrating "constitutional error at the original trial … that undermines confidence in the judgment." § 547.031.3. Because the Special Prosecutor's claims lack merit, the Court will not stay Johnson's execution to order a hearing on those claims because the outcome of that hearing cannot aid Johnson or result in his conviction and sentence being vacated.

The Special Prosecutor's first claim is based on a statistical study of charging decisions by then-prosecuting attorney McCulloch that the Special Prosecutor claims proves McCulloch sought the death penalty disproportionately against African-American defendants, especially when the murder victims were white and even more especially when those victims were white police officers. As noted above, Johnson has already brought – and this Court has already rejected – this claim more than five years ago. *See* *supra* note 4. The only thing "new" is the study on which the Special Prosecutor relies,

14

but this study could have been conducted years earlier, and neither the Special Prosecutor nor Johnson offers any excuse why it was not and could not have been obtained in time to be asserted in 2016 when Johnson first made his selective prosecution claim to this Court.

In addition to these defects, the Supreme Court has made it clear that attacks on the charging decisions in capital cases are not to be indulged lightly. "[T]he nature of the capital sentencing decision, and the relationship of the statistics to that decision, are fundamentally different from the corresponding elements [of discrimination] in the venire-selection or Title VII cases." *McCleskey v. Kemp*, 481 U.S. 279, 294 (1987). Prosecutors weigh many factors in deciding whether and when to seek the death penalty, and such broad discretion cannot be challenged by general attacks on a prosecutor's character or record. Instead, there must be "exceptionally clear proof" that the prosecutor has abused that discretion in the particular case at hand. *Id.* at 297.

Here, there is nothing in the Special Prosecutor's motion to vacate Johnson's conviction showing *directly* that any charging decision with respect to Johnson was motivated by racial animus. At most, the Special Prosecutor seeks to create an *inference* of racial animus from multiple cases over many years or from the differences between Johnson's case and one other carefully selected case. To boil decades of charging decisions down to one or two factors, i.e., the race of the defendant and the victim(s), oversimplifies a complex process. "Prosecutors must look at a variety of factors including statutory aggravating circumstances, the type of crime, the strength of the evidence and the defendant's involvement in the crime in deciding whether to seek the death penalty." *State v. Taylor*, 18 S.W.3d 366, 377 (Mo. banc 2000). Any one or more

15

of these factors may outweigh the others in a particular case, and each factor may be weighed differently at different times in the course of a given case. With no direct evidence, and no statistical evidence that clearly proves (and not merely suggests) that racial animus was a contributing factor in the charging decisions in Johnson's case rather than the many other obvious and plainly horrifying aspects of his crime, the Special Prosecutor's motion falls far short of the "exceptionally clear proof" *McCleskey* holds is required to lodge a selective prosecution attack on a conviction that is otherwise constitutionally sound, and it ignores the more nuanced analysis of these issues this Court held was required in *Taylor*. 481 U.S. at 279; 18 S.W.3d at 377.

Finally, even if this Court had not rejected this claim before (which it has), and even if there were some legitimate reason for this claim arising mere days before the execution date (which there is not), and even if the Special Prosecutor's statistics succeed in raising a clear and convincing inference that racial animus was a substantial factor in McCulloch's decision to seek the death penalty in Johnson's case (which they do not), the Special Prosecutor *still* fails to meet the standard for relief imposed by section 547.031, which is that he must establish "constitutional error at the original trial … that *undermines the confidence* in the judgment." § 547.031.3 (emphasis added).

No matter what the basis for the original charging decision in Johnson's case, in the end it was the *jury* – not the prosecutor – that found Johnson guilty of murder in the first degree; it was the *jury* that found the three statutory aggravators; it was the *jury* that weighed the aggravating and mitigating factors; and it was the *jury* that found death to be the appropriate sentence. Nothing in the Special Prosecutor's motion succeeds in casting

16

any doubt over the fact that Johnson was judged by a constitutionally fair jury and that this jury fairly and independently fulfilled its constitutional role. Accordingly, even if this Court were to order a hearing on the Special Prosecutor's motion to vacate, there is no likelihood that the Special Prosecutor would succeed on his first claim because it fails to state an adequate ground for vacating Johnson's conviction in that it does not establish a constitutional error at the original trial that undermines the confidence in Johnson's conviction and sentence.

The Special Prosecutor's second claim is that McCulloch was so bound and determined to keep African-Americans off the jury that – knowing *Batson* prohibited him from using his peremptory strikes to do so directly – McCulloch tried to manipulate the trial court into doing it for him. As noted above, the Special Prosecutor never explains with respect to this second claim who committed constitutional error or how any such error prejudiced Johnson. It cannot have been McCulloch, who did not even use all his peremptory strikes, and it cannot have been the circuit court because – in Johnson's second trial – the court ended up applying McCulloch's unused peremptory strikes randomly across the entire venire. In fact, never once in 17 years has Johnson claimed the circuit court's action in this regard was constitutional error, and it does not seem that the Special Prosecutor is doing so now.

Rather than rely on McCulloch's refusal to use all his peremptory strikes directly as a claim of constitutional error, the Special Prosecutor instead points to this as further support for the claim that McCulloch's decision to strike venireperson Cottman, an African-American, was motivated by her race in violation of *Batson*. At trial, McCulloch

17

justified his strike by noting Cottman had worked for the Annie Malone Children's Home, which had provided services to Johnson when he was a child. For 17 years, every single court – state and federal – that has looked at Johnson's *Batson* claim regarding Cottman has found this explanation to be sufficient, race-neutral, and not a pretext for a racially motivated strike. This Court has rejected this precise claim on multiple occasions, and nothing in the Special Prosecutor's section 547.031 changes the claim in any material way, let alone enhances what, so far, has been a complete absence of any success on the merits of this second claim. Moreover, the Special Prosecutor's motion to vacate Johnson conviction fails to establish that McCulloch's use of (or his failure to use all of) his peremptory strikes was (or in any way led to) constitutional error in Johnson's trial sufficient to undermine confidence in Johnson's conviction or sentence, and nothing in the Special Prosecutor's second claim supplies any legitimate basis for granting relief on a *Batson* claim regarding venireperson Cottman that Johnson has brought and had rejected so many times in the past.

## Conclusion

Accordingly, for the reasons set forth above, both Johnson's and the Special Prosecutor's motions to stay Johnson's execution are overruled.[12] For Johnson's motion, he has no claims pending in any court and, therefore, cannot show a likelihood of success on such claims. Moreover, Johnson cannot rely on the Special Prosecutor's likelihood of success on the claims the Special Prosecutor has raised in his motion to vacate Johnson's

---

[12] No Rule 84.17 motions for rehearing shall be filed in this matter.

18

conviction under section 547.031 because the Special Prosecutor has no likelihood of succeeding on those claims. Even if Johnson's execution were stayed and the Special Prosecutor's motion to vacate Johnson's conviction under section 547.031 were to be remanded to the circuit court for the full hearing he claims he should have, the Special Prosecutor has shown no likelihood that he will succeed on either of the two claims asserted in that motion. Both claims the Special Prosecutor brings now are largely just re-packaged versions of claims Johnson has brought (and seen rejected) many times before. Nothing in the Special Prosecutor's motion materially changes these claims or offers any greater likelihood of success than those claims have had in the past.

Wilson, C.J., Russell, Powell, Fischer and Ransom, J.J., concur;
Breckenridge, J., dissents in separate opinion filed;
Draper, J., concurs in separate opinion of Breckenridge, J.



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,         )
                                        )
          Respondent,     )
                                          )
v.                                     )      No. SC89168
                                          )
KEVIN JOHNSON,         )
                                          )
          Appellant.      )
                                          )
and                                  )
                                          )
STATE OF MISSOURI,         )
                                          )
          Plaintiff/Appellant,   )
                                          )
v.                                     )      No. SC99873
                                          )
KEVIN JOHNSON,         )
                                          )
          Defendant/Appellant. )

**DISSENTING OPINION**

I respectfully dissent from the principal opinion that declines to exercise the Court's equitable power to stay Kevin Johnson's execution to allow, as provided for in section 547.031,[1] adjudication of the motion filed by the special prosecutor of St. Louis County seeking to vacate Mr. Johnson's conviction for the racially biased decision-making of the

---

[1] All statutory citations are to RSMo Supp. 2021, unless otherwise indicated.

trial prosecuting attorney. A stay is warranted under the standard the United States Supreme Court employs, and granting a stay of execution is the only way to afford to the special prosecutor and Mr. Johnson the mandatory process section 547.031 requires in these circumstances. The proper application of legal principles to the circumstances presented by the special prosecutor's motion to stay Mr. Johnson's execution should lead to the issuance of a stay of execution.

## Background

This opinion will not restate the full factual and procedural background reported in the principal opinion relating to the commission of the crime of which Mr. Johnson is convicted or the subsequent litigation seeking to overturn that conviction prior to the special prosecutor's motion in Case No. SC99873 and will, instead, start with a discussion of the statutory proceeding that is the grounds for the special prosecutor's motion for a stay of execution.

In 2021, the General Assembly enacted section 547.031, which empowers a prosecuting or circuit attorney in the jurisdiction of conviction to file a motion to vacate or set aside the judgment at any time upon information that the convicted person may be innocent or may have been erroneously convicted. In its entirety, section 547.031 provides:

> 1. A prosecuting or circuit attorney, in the jurisdiction in which a person was convicted of an offense, may file a motion to vacate or set aside the judgment *at any time if he or she has information that the convicted person may be innocent or may have been erroneously convicted.* The circuit court in which the person was convicted shall have jurisdiction and authority to consider, hear, and decide the motion.
>
> 2. Upon the filing of a motion to vacate or set aside the judgment, *the court shall order a hearing and shall issue findings of fact and conclusions of law*

2

*on all issues presented. The attorney general shall be given notice of hearing of such a motion by the circuit clerk* and shall be permitted to appear, question witnesses, and make arguments in a hearing of such a motion.

3. The court shall grant the motion of the prosecuting or circuit attorney to vacate or set aside the judgment where the court finds that there is clear and convincing evidence of actual innocence or constitutional error at the original trial or plea that undermines the confidence in the judgment. In considering the motion, the court shall take into consideration the evidence presented at the original trial or plea; the evidence presented at any direct appeal or post-conviction proceedings, including state or federal habeas actions; and the information and evidence presented at the hearing on the motion.

4. The prosecuting attorney or circuit attorney shall have the authority and right to file and maintain an appeal of the denial or disposal of such a motion. The attorney general may file a motion to intervene and, in addition to such motion, file a motion to dismiss the motion to vacate or to set aside the judgment in any appeal filed by the prosecuting or circuit attorney.

(Emphasis added).

On December 1, 2021, slightly more than three months after section 547.031 took effect, Mr. Johnson filed an application with the Conviction and Incident Review Unit ("CIRU") in the office of the St. Louis County Prosecuting Attorney, asking that it review his allegations that his conviction is the product of racial bias. On May 11, 2022, the attorney general moved this Court to set an execution date for Mr. Johnson. While the motion was pending, the CIRU notified this Court in July that it had conducted a "preliminary investigation" of Mr. Johnson's claims but had reached no conclusions. Instead, it had determined the entire prosecutor's office had a conflict of interest because one of Mr. Johnson's original defense attorneys is now the office's chief trial counsel. The CIRU stated it was attempting to locate a special prosecutor to complete the investigation and determine what action to take but had been "unable to locate a prosecutor who is willing and

3

able to serve." On August 24, 2022, this Court scheduled Mr. Johnson's execution for November 29, 2022.

On October 12, 2022, the St. Louis County Prosecuting Attorney's Office filed a motion in the circuit court asserting the same conflict of interest it asserted in this Court in July. The prosecutor's office stated it had a conflict of interest because the office's chief trial counsel represented Mr. Johnson in the trial resulting in the conviction at issue and a previous trial that had resulted in a hung jury. As a result, the office requested that the court appoint a special prosecutor, pursuant to section 56.110, RSMo 2016. In its motion, the office stated the circuit court has authority to appoint a special prosecutor and E.E. Keenan consented to serve and requested he be appointed special prosecutor. The circuit court sustained the motion later the same day and appointed Mr. Keenan, with consent, as special prosecutor.

On November 15, 2022, 32 days after appointment (during which time the special prosecutor states he reviewed tens of thousands of pages of records related to Mr. Johnson's case, interviewed witnesses, and collected other evidence) and 14 days before Mr. Johnson's scheduled execution, the special prosecutor filed a motion in the circuit court to vacate Mr. Johnson's conviction pursuant to section 547.031. His motion claims that: (1) Mr. Johnson's right to equal protection was violated when the trial prosecuting attorney allegedly chose to charge him with capital murder and seek the death penalty because Mr. Johnson is black; and (2) previously undisclosed work product from the prosecutor's office, together with newly available legal authority, support the *Batson* claim that the trial

4

prosecuting attorney struck a black venireperson, Debra Cottman, on the basis of race and further show the pervasive racial bias underlying his conviction.

On November 16, the circuit court summarily overruled the special prosecutor's motion to vacate under section 547.031.2. The special prosecutor and Mr. Johnson moved to amend the circuit court's judgment or alternatively grant a new trial. The circuit court held a conference regarding those motions on November 17 and, on November 19, entered a judgment overruling them. In its judgment, the circuit court acknowledged the plain language of section 547.031 requires it to hold a hearing on the special prosecutor's motion but stated there was insufficient time "for a reasonable and adequate opportunity for the parties to prepare and present evidence, to conduct discovery, to subpoena witnesses nor for the court to consider the evidence at the hearing and to prepare appropriate findings of fact and conclusions of law" with only six business days before Mr. Johnson's execution. The circuit court recognized it had no authority to stay the execution, but it could not reasonably comply with the requirements of section 547.031 before the execution. Accordingly, the circuit court determined it had no choice but to overrule the motion.

Both the special prosecutor and Mr. Johnson appealed the denial of the special prosecutor's section 547.031 motion and both have filed motions for a stay of execution pending the resolution of those appeals. I dissent from the principal opinion's analysis of and ruling on the special prosecutor's motion to stay Mr. Johnson's execution, as well as all statements in the principal opinion that are not essential to the Court's decision.

**Mr. Johnson's Execution Should Be Stayed**

"[A] stay of execution is an equitable remedy." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). When considering a motion for a stay, the Court weighs and balances: (1) the movant's probability of success on the merits; (2) the threat of irreparable harm absent a stay; (3) the balance between harm to the movant absent the stay and the injury inflicted on other interested parties if the stay is granted; and (4) the public interest. *See id.* (stay of execution); *State ex rel. Dir. of Revenue v. Gabbert*, 925 S.W.2d 838, 839 (Mo. banc 1996) (preliminary injunction). Accordingly, to meet the standard for a stay, the special prosecutor must first show a probability of success on the merits. To show a probability of success on the merits sufficient to justify preliminary injunctive relief, a party need only show a "fair ground for litigation," not "a greater than fifty per cent likelihood of success." *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1017 (8th Cir. 2022).

In assessing the special prosecutor's success on the merits, it is essential to recognize the special prosecutor asserts his claims pursuant to section 547.031. Claims filed pursuant to section 547.031 are asserted by the state through "[a] prosecuting or circuit attorney" with "information that the convicted person may be innocent or may have been erroneously convicted." Section 547.031.1; *see also Imbler v. Pachtman*, 424 U.S. 409, 427 n.25 (1976) (recognizing a prosecutor's ethical obligation after conviction "to inform the appropriate authority of after-acquired or other information that casts doubt upon the correctness of the conviction"). And though such claims may entail judicial inquiry into matters that, if raised by the convicted person, would be considered duplicative of prior claims, it is a very different matter for a prosecuting attorney, as a representative of the state, to present those

6

claims. *See State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 581 (Mo. banc 1994) (stating prosecuting attorneys represent the people of the state); *State v. Selle*, 367 S.W.2d 522, 530 (Mo. 1963) (holding a prosecuting attorney prosecutes on behalf of the state).

In addition, section 547.031.2 requires that the circuit court hold a hearing and consider "the evidence presented at the original trial or plea; the evidence presented at any direct appeal or post-conviction proceedings, including state or federal habeas actions; and the information and evidence presented at the hearing on the motion." Section 547.031.2. As a consequence, a prosecutor's claim asserted under section 547.031 entails a broad consideration of all the evidence previously presented and new evidence and information presented at the hearing that the convicted person may be innocent or may have been erroneously convicted. In this way, the General Assembly has equipped prosecutors with the power to fulfill their ethical obligations as "ministers of justice" and representatives of the people of the state to see that justice is done, even when that means not sustaining a conviction, and even when such claims would be duplicative of prior claims if asserted by the convicted person. *See State v. Terry*, 304 S.W.3d 105, 108 n.5 (Mo. banc 2010) (stating the "ethical norm" for state attorneys "is to see that justice is done—not necessarily to obtain or sustain a conviction"); *see also* Rule 4-3.8 cmt. 1 ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate.").

In this case, the special prosecutor's specific claims of constitutional error at Mr. Johnson's trial are that: (1) the trial prosecuting attorney's decision to charge Mr. Johnson with capital murder and seek the death penalty was motivated by racial prejudice in violation of Mr. Johnson's right to equal protection of the laws; and (2) the trial

7

prosecuting attorney used a peremptory strike to strike a black venireperson on the basis of race, again violating Mr. Johnson's right to equal protection of the laws.

Although Mr. Johnson previously asserted those claims, section 547.031 permits the special prosecutor to assert any and all claims, including those previously brought by the convicted person, to serve its purpose of vacating convictions of persons who are shown by clear and convincing evidence to be convicted when there was constitutional error that undermines confidence in the judgment. And it permits a prosecuting attorney to present all evidence relevant to such claims, regardless of whether the defendant is procedurally defaulted from raising such claims, including evidence no court has considered, such as the evidence the special prosecutor intends to present, here, in support of his claims.

In the first claim asserted in his section 547.031 motion, the special prosecutor alleges the trial prosecuting attorney's decision to charge Mr. Johnson with capital murder and seek the death penalty was based on Mr. Johnson's race in violation of Mr. Johnson's right to equal protection. Under longstanding Supreme Court decisions, the Equal Protection Clause prohibits selective prosecution "based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Batchelder*, 442 U.S. 114, 125 n.9 (1979); *accord United States v. Armstrong*, 517 U.S. 456, 464 (1996). "A defendant may demonstrate that the administration of a criminal law is directed so exclusively against a particular class of persons with a mind so unequal and oppressive that the system of prosecution amounts to a practical denial of equal protection of the law." *Armstrong*, 517 U.S. at 464-65 (internal quotation marks and alterations omitted).

8

In support of the selective-prosecution claim, the special prosecutor alleges the trial prosecuting attorney tried five cases during his tenure as prosecutor where defendants were charged with killing police officers and the prosecutor sought the death penalty against all four black defendants but not the single white defendant. The trial prosecuting attorney invited only the white defendant to submit mitigating circumstances for consideration before the prosecutor decided whether to seek the death penalty and, thereafter, the prosecutor did not seek the death penalty against the white defendant. No similar invitations to submit mitigating evidence were extended to any of the four black defendants.

The special prosecutor further alleges that, although the trial prosecuting attorney stated publicly that the prosecuting attorney's office followed written policies and procedures in determining when to seek the death penalty, there were, in fact, no written policies and the trial prosecuting attorney made the decision on an ad hoc basis. In this vein, the special prosecutor alleges that, in his attempt to determine how the prosecutor's officer decided to seek the death penalty in Mr. Johnson's case, the special prosecutor attempted to contact the trial prosecuting attorney and the two assistant prosecuting attorneys who tried the case. The trial prosecuting attorney and one of the assistant prosecuting attorneys declined to speak with the special prosecutor at all. The remaining assistant prosecuting attorney spoke with the special prosecutor informally. When asked how the office decided to seek the death penalty, that attorney responded she was reluctant to divulge "family secrets, so to speak," but it was ultimately the trial prosecuting attorney's decision.

The special prosecutor also relies on a study unavailable during Mr. Johnson's postconviction litigation that analyzed charging decisions in the St. Louis County

9

Prosecuting Attorney's Office during the trial prosecuting attorney's tenure.[2] The study concludes the office was roughly three and half times more likely to seek the death penalty for murders involving white victims than for those involving black victims. As a result, the race of the victim effectively acted as a non-statutory aggravating factor. That study attributes the disparity to prosecutorial decision making, fairly imputed to the trial prosecuting attorney, not the juries or the courts.

As further evidence of trial prosecuting attorney's racial bias against black defendants, the special prosecutor submitted an affidavit from the district attorney of Deschutes County, Oregon. The district attorney states that, in 2018, the trial prosecuting attorney spoke at a conference for the Oregon district attorneys' association. During his talk, the trial prosecuting attorney displayed a photograph depicting several black males between the ages of 16 and 20.[3] While displaying the picture, the trial prosecuting attorney allegedly stated: "This is what we were dealing with" in a sharp and contemptuous tone of voice.

None of the foregoing examples of racial bias were previously considered in ruling on a claim that the trial prosecuting attorney's decision to charge Mr. Johnson with capital murder was motivated by racial bias. And, for that reason, Mr. Johnson's past failures to

---

[2] A copy of the study was submitted as an exhibit in support of the special prosecutor's motion to vacate. The study was completed in September 2022 by Frank Baumgartner, a political science professor at the University of North Carolina, who states he is "experienced in the statistical study of public policy and criminal justice outcomes, including the death penalty in particular."

[3] The photograph did not depict the black males engaging in any unlawful activity, and the trial prosecuting attorney did not state they were engaging in any unlawful activity.

prevail on such a claim do not reasonably support the conclusion that the special prosecutor's claim will not prevail. I would find that, on this claim, the special prosecutor has shown a probability that he will succeed in establishing a constitutional error that undermines confidence in the judgment.

The special prosecutor's second claim of constitutional error is that the trial prosecuting attorney struck a black woman from the venire on the basis of race. Under *Batson*, a defendant's right to equal protection of the laws is violated when a prosecutor challenges a potential juror on the basis of race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). "Equal justice under law requires a criminal trial free of racial discrimination in the jury selection process." *Flowers v. Mississippi*, 139 S. Ct. 2228, 2242 (2019).

With respect to that claim, the special prosecutor shows that in Mr. Johnson's first trial, the trial prosecuting attorney decided not to exercise all the state's peremptory strikes with the expectation that the circuit court would follow its prior practice and, ultimately, strike black members of the venire. The trial transcript shows the circuit court's regular practice was to exercise the state's unused strikes and "going from the highest number or lowest number, take off the remaining jurors that equal – that make up the remainder of the nine strikes that the State does not take." It is apparent from the transcript, however, that the circuit court decided it would not strike venirepersons without considering whether they were members of a protected class. As the circuit court stated to the trial prosecuting attorney, if it exercised the state's unused peremptory challenges to strike venirepersons without any consideration of their membership in protected classes, then "in effect, [the state would] have stricken those people and [the state would] have given no race-neutral reason

11

for that strike." Accordingly, the circuit court exercised the state's remaining strikes but did not strike any venireperson who was a member of a protected class.

The trial prosecuting attorney argued strenuously against the circuit court's decision to ensure reducing the remaining juror pool to the final 12 jurors would not result in the arbitrary elimination of black members of the venire. He called the circuit court's practice "silly" and "bizarre" and objected that he was being penalized, suggesting the retention of black jurors would "penalize" the prosecution and that the circuit court was acting in a discriminatory manner toward white males.

After the trial resulted in a hung jury, the prosecutor's office circulated a memorandum gathering case law to convince the circuit court that refusing to use the unused strikes against black members of the venire was error. In the second trial, the trial prosecuting attorney again chose not to exercise all of the state's peremptory challenges. Instead, the trial prosecuting attorney used just four strikes – three to strike black members of the venire. The circuit court then used the state's remaining strikes to strike members of a random pool of venire members. The special prosecutor alleges that, although not as blatant an attempt to have black jurors struck from the venire, the trial prosecuting attorney still hoped to strike at least one additional black member by chance.

Because the primary panel of 30 venirepersons consisted of 24 white members and six black members and the trial prosecuting attorney struck three of those six, Mr. Johnson asserted the trial prosecuting attorney was purposefully excluding black venirepersons in violation of *Batson* and he particularly challenged the trial prosecuting attorney's use of a peremptory strike to strike Ms. Cottman, a black woman. The prosecutor's office stated it

12

struck Ms. Cottman from the venire because she was unwilling to answer questions about the death penalty and because she served as a "visiting foster parent" with the Annie Malone Children's Home, which provided services to Mr. Johnson as a youth.

The special prosecutor alleges the trial prosecuting attorney's explanation was pretextual because, in her role as visiting foster parent, Ms. Cottman only had children at her home on weekends; Mr. Johnson had stayed at Annie Malone's for only one week as a child through placement by the department of family services; and Ms. Cottman did not know Mr. Johnson or anyone associated with his case.

The special prosecutor further supports his claim that the trial prosecuting attorney's explanation for striking Ms. Cottman was pretextual because the trial prosecuting attorney chose not to strike similarly situated white members of the venire, four of whom who had worked within the department of family services, which took custody of Mr. Johnson for most of his childhood, or the foster care system. And with regard to her supposed unwillingness to answer questions about the death penalty, the special prosecutor alleges the record shows she was as willing as other members of the venire to answer such questions.

This Court denied the *Batson* claim in Mr. Johnson's direct appeal but it did not take into consideration all the circumstances of the four white venirepersons who worked within the department of family services or the foster care system and yet were not stricken. A stricken black juror and a non-stricken white juror need not be identical in all respects to support an inference of discrimination. *See Flowers*, 139 S. Ct. at 2243, 2245 (discrediting the state's explanation for striking a black juror who worked at Wal-Mart with defendant's father by comparing the stricken black juror with multiple non-stricken white jurors who

13

worked at a bank where the defendant's family members were customers). While the non-stricken white members of the venire may not have served as visiting foster parents at Annie Malone's Children's Home, they worked within the department of family services or the foster care system and are, for that reason, sufficiently similarly situated to permit an inference that the trial prosecuting attorney's discriminatory selection was based on race.

In addition, when the Court denied Mr. Johnson's *Batson* claim on direct appeal, it did not consider historical evidence of *Batson* violations by the St. Louis County Prosecuting Attorney's Office, stating "[a] previous *Batson* violation by the same prosecutor's office does not constitute evidence of a *Batson* violation in this case, absent allegations relating to this specific case." *State v. Johnson*, 284 S.W.3d 561, 571 (Mo. banc 2009). Since that time, the Supreme Court has made clear a court must consider "relevant history of the State's preemptory strikes in past cases." *Flowers*, 139 S. Ct. at 2243. Here, the relevant history of the St. Louis County Prosecuting Attorney's Office includes four *Batson* violations in the five years preceding Mr. Johnson's conviction – information that has never been considered in assessing Mr. Johnson's *Batson* claim. Based on the foregoing, I would find that, as with his selective-prosecution claim, the special prosecutor has shown evidence that, if believed, establishes constitutional error at trial that undermines confidence in the judgment in relation to his *Batson* claim.

The remaining factors for granting a stay all weigh in favor of staying Mr. Johnson's execution. The threat of irreparable harm absent a stay is obvious. The state will be deprived of the process section 547.031 requires, including the right to appeal, and Mr. Johnson will be executed while the lawfulness of his conviction has not been adjudicated under the statute.

14

With respect to the balance between harm to the movant absent the stay and the injury inflicted on other interested parties if the stay is granted, the injury inflicted on other interested parties is significant to be sure. Last-minute disruptions in death penalty cases impose costs on everyone involved, including the victim's family and friends, former jurors, court personnel, and counsel among others. Yet, the harm to the movant is irrevocable and jeopardizes the state's interest in ensuring the integrity of its convictions. On balance against the absolutely irrevocable harm to the state and Mr. Johnson, a stay is equitable. For the same reasons, the public interest in vacating convictions obtained in violation of a defendant's constitutional rights that are embodied in section 547.031 will be defeated unless a stay is granted. As a consequence I would sustain the special prosecutor's motion to stay Mr. Johnson's execution, finding all the factors articulated in *Hill* weigh in favor of staying execution.

Moreover, in addition to granting a stay under the general standard found in *Hill*, I would grant a stay because it is the only way not to infringe on the protections against wrongful convictions provided by section 547.031, particularly when a sentence of death has been imposed. Section 547.031 unambiguously provides that, once the appropriate prosecutor or circuit attorney brings a motion under section 547.031, the circuit court "*shall* order a hearing and *shall* issue findings of fact and conclusions of law on all issues presented" and that the "attorney general *shall* be given notice of hearing of such motion" and be permitted to appear, question witnesses, and present arguments. Section 547.031.2 (emphasis added). *None* of these requirements were met with respect to the special prosecutor's motion to vacate Mr. Johnson's conviction.

15

Nothing in section 547.031 says the circuit court "shall" order a hearing on the prosecutor's or circuit attorney's motion to vacate only if the prosecutor or circuit attorney shows a likelihood of success on the merits of the claims in their motion, or even that the circuit court "shall" order a hearing on the prosecutor's or circuit attorney's motion only if the motion alleges facts which, if believed, would justify relief. Instead, section 547.031 unequivocally requires notice to the attorney general, a hearing, and findings of fact and conclusions of law any time an authorized prosecutor or circuit attorney files a motion under section 547.031.

The circuit court properly noted the special prosecutor filed the motion to vacate so close to Mr. Johnson's execution date that there was insufficient time to give that motion all the process section 547.031.2 demands. And the circuit court noted it lacked authority to stay an execution set by warrant of this Court. This Court's warrant setting Mr. Johnson's execution for November 29, 2022, precludes giving effect to the General Assembly's plain and unambiguous requirement that every section 547.031 motion to vacate is entitled to a hearing and findings of fact and conclusions of law.

The language of Rule 30.30(a)-(c) regarding setting and staying an execution indicates the Court will not set an execution date until a defendant has completed direct appeal, postconviction proceedings, and had the opportunity to seek federal habeas relief. Rule 30.30 does not address proceedings under section 547.031 because the rule was adopted prior to the enactment of the statute, so it cannot be read to intend not to permit adjudication under section 547.031. In addition, because the statute permits a prosecuting or circuit attorney to file a motion to vacate a conviction in a criminal case upon obtaining information

16

of a defendant's innocence or of constitutional error at trial undermining confidence in the judgment, the Court would not be able to determine whether such litigation might be filed or when it would conclude when considering whether to set an execution date. Therefore, giving full effect to the General Assembly's purpose in enacting section 547.031 requires a stay to permit proceedings under that statute to be fully adjudicated through an appeal. Importantly, this Court's rules are procedural in nature and, contrary to the attorney general's argument, do not supersede the requirements of substantive law enacted by the General Assembly. Mo. Const. art. V, sec. 5. As a result, entirely apart from the general standard for granting a stay, the Court should issue a stay under the circumstances of this case in order to permit full adjudication of the special prosecutor's section 547.031 motion.

## Conclusion

Under the analysis for the standard for a stay of execution, the factors weigh in favor issuing a stay. Likewise, the Court should grant a stay because only adjudication of the special prosecutor's allegations in his motion to vacate will give full effect to the General Assembly's purpose in enacting section 547.031. For these reasons, I dissent from the principal opinion's overruling of the special prosecutor's motion for a stay of execution.

_____
PATRICIA BRECKENRIDGE, JUDGE

17